### O'CONNOR v. STEVENSON et al.

(Supreme Court, Appellate Division, First Department. April 7, 1899.)

SALES—SECURITY—PAYMENT—JURY.

> Under a sale of saloon fixtures and good will, the buyer was to pay a certain sum by a date given, and receive an assignment of the license. In an action for damages for failure to assign the license, whereby the buyer was closed out by the police, plaintiff testified that he gave defendant a bank book and order for the sum as security therefor (the bank requiring 90 days' notice of withdrawals); that the order and book were accepted in absolute payment, and with the understanding that the license would be assigned; and that he made repeated efforts to obtain the license, and defendant repeated promises to assign it. *Held*, that the question whether the book and order were received absolutely, or as security, was for the jury.

Appeal from trial term, New York county.

Action by David F. O'Connor against Sewanee M. Stevenson and others. There was a judgment for defendants, and plaintiff appeals. Reversed.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY, O'BRIEN, and INGRAHAM, JJ.

Edward A. Alexander, for appellant.

William G. McCrea, for respondents.

O'BRIEN, J. This action was brought to recover damages for an alleged breach of contract, said breach consisting in the failure of the defendants to assign to the plaintiff a liquor license for a saloon sold by them to him. From the plaintiff's evidence it appears that he entered into an agreement to purchase for $3,000 the good will and fixtures of the liquor store at No. 1677 Third avenue, including the liquor license, and that he was to pay down $600 in cash, and, in addition, the rent of the premises for the first month of $50. At the time of closing the contract, on August 7, 1893, the plaintiff, being unable to pay all the cash agreed upon, for the reason that some of his money was in a savings bank which required 90 days' notice before money could be drawn, arranged with the defendants, so he states, for payment to them of $200 in cash then, gave his promise to make another payment of $150 within four or five days, and to pay the first month's rent of $50, both of which payments he subsequently made, and, in addition, handed the defendants his bank book, together with a written order on the savings bank for the remaining $250. He thereupon, on August 7, 1893, entered into possession of the premises, and made repairs, and was given an old license, not in his name, and undertook to do business as a retail liquor dealer. The police, however, would not recognize the license given him (as it was not in his name), and threatened to close up the place unless he obtained a license that was valid. The plaintiff states that he thereupon interviewed the defendants' agent, who told him that he would have Jordan, in whose name the license was, and who was another employé of the defendants, meet him at the board of excise, and have the license transferred, on a day which was fixed; that at such time the plaintiff went to the board of excise, but Jordan did not appear, neither on that day nor the next day, when the plaintiff was informed he would be present. The plaintiff says that he again returned to the office of the defendants, and complained of his inability to continue business by reason of the interference of the police, and was again told to go ahead under the paper which had been given him, and not to mind the police. This he undertook to do, and his place was finally closed by the police, who refused to permit him longer to do business. The plaintiff then demanded of the defendants that they should return the money that he had advanced, and reimburse him for his expenditures for the repairs and for the rent paid. The defendants did return the bank book and order, but refused in other respects to comply with his demand; and thereafter this suit was brought to recover damages.

The written agreements that were introduced in evidence provide in terms that the plaintiff was to pay $3,000 for the good will and fixtures, and the matter of the license was in a separate writing, which recites that the defendants were to transfer to the plaintiff the license upon payment of $250 on or before September 5, 1893. The inference to be drawn from the plaintiff's evidence is that the agreement for the payment of the $3,000 was to include payment for the license, and that the agreement was drawn before August 7, 1893, the date fixed for the closing of the contract, and that, in view of the plaintiff's financial condition, a modification was made as to the manner of payment. It is unnecessary, however, for the purpose of determining the questions on this appeal, to reach a conclusion as to whether or not the license was included in the consideration of $3,000, which the writing referred to provided should be paid for the good will and fixtures; for it clearly appears that the plaintiff was not to pay down the full sum of $3,000, but was to make certain payments, upon which he was to get the property bargained for, which necessarily included the license, without which the good will, if not also the fixtures, would have been entirely valueless. The plaintiff testifies that he paid, on account of the $3,000 mentioned, first $200, and subsequently $150, and that he also paid $50 rent; and the only question remaining is as to whether or not he was entitled to receive the license, the nondelivery of which is the breach of the contract claimed by the plaintiff. The solution of this question necessarily turns upon whether or not the remaining $250, which the plaintiff agreed to pay on or before September 5, 1893, was or was not paid or arranged for, so that the obligation was on the defendants to transfer the license. On this point, according to the plaintiff's evidence, he, being unable to pay the money, because it was tied up in his savings bank, offered, and the defendants accepted in lieu thereof, the bank book and an order on the bank for $250.

In speaking of the purpose for which the order for $250 and the bank book were given, the plaintiff in one place says that it was to secure the payment of that amount; but the plaintiff positively testifies that the order and book were accepted by the defendants as an absolute payment, and were received with the understanding that the defendants would transfer the license. And, in support of this understanding of the plaintiff, we have his repeated efforts to obtain the license, and, if he is to be believed, the repeated promises of the defendants that they would procure it for him, by having the license transferred from the name of the employé Jordan to his name. It is not disputed that what the plaintiff purchased, and what the defendants intended to sell, was the property and good will, together with a license to do a retail liquor business, and, of these, the most valuable was the license, without which the fixtures, good will, and possession of the premises were of little value. That this was well understood by both parties is fairly deducible from the plaintiff's testimony, and it has a direct bearing on the credibility to be given to the plaintiff's statement that, to enable him to do business until such time as he could get his money from the bank, the defendants were willing to accept, and did accept, in lieu of cash, the order in their favor on the

bank, together with the bank book, which, acting, as it did, as an assignment of so much of the money to the plaintiff's credit in the bank, was practically equivalent to a cash payment.

We think, upon such evidence, that it was a question for the jury as to whether or not the order and bank book were received in lieu of the amount due, upon the payment of which the plaintiff was entitled to a transfer of the license. The error into which we think the learned trial judge fell was in attaching too much importance to the use of the word "security," as employed by the plaintiff in speaking of the transaction. In one sense it was a security, and it was for that reason that the defendants might very well conclude to accept it as a compliance with the agreement to pay $250 in cash. The question is, not whether it was or was not a security, but whether it was given and accepted in lieu of the cash which the plaintiff agreed to pay on or before September 5th. If given absolutely, and received as a means of payment, then the defendants had no right to refuse to assign the license, and for the damages resulting from the breach of the agreement they are liable. The plaintiff's explicit statement is that the order and bank book were accepted and received in absolute payment, upon receipt of which the defendants agreed to transfer the license.

Upon the record as it stood at the close of the plaintiff's case, we think there was sufficient evidence to go to the jury on the question as to what was the agreement between the parties,—whether the defendants were under a conditional obligation merely, or an absolute one, to transfer the license. The jury, on the plaintiff's testimony, might have found that the bank book and order were received as an absolute payment, and it was error, therefore, to decide that question adversely as one of law.

The judgment, accordingly, should be reversed, and a new trial ordered, with costs to the appellant to abide the event. All concur.